Howell, Judge,
delivered the opinion of the court:
The claim embraced in this suit is based upon Section 37 (a) of the National Defense Act, Title 10, TJ. S. O. Section 361, and upon Section 12 of the Pay Readjustment Act, as *531 amended, Title 37, U. S. C. Section 112, which authorize the transportation of an officer and his dependents from his last military station to his home.
Briefly, the facts which are not in material dispute are as follows: Plaintiff, a citizen of the United States by birth, went to Oxford, England, as a Bhodes Scholar in 1932; he remained as such scholar until 1935 when he was appointed as a fellow and tutor in economics at Queens College, Oxford, for a five-year term, which appointment was renewed for seven years commencing in 1940. The position carried with it certain privileges, including quarters provided by the college and participation in a retirement pension plan to which plaintiff and the college contributed fixed percentages based upon his rate of pay.
With the advent of World War II, plaintiff left Queens College on a temporary leave of absence to serve as economic advisor to the American Minister in London. In January 1942, the Minister, W. Averell Harriman, sent plaintiff on a mission to the War Production Board in Washington where plaintiff accepted employment with that Board.
Plaintiff took up his abode with his brother who was then living near Washington, where he lived until the time of his marriage in March 1942, when he moved into his wife’s apartment at 2869 28th Street NW., Washington, D. C.
In May 1943, plaintiff was inducted into the Army at Fort Myer, Virginia, and served as a private and noncom-missioned officer until August 1944, at which time he was commissioned. At the time plaintiff was inducted and at the time he applied for a commission he gave 2869 28th Street NW., Washington, D. C., as his civilian address. This was the only address shown as plaintiff’s home of record that the War Department had until January 1946, when plaintiff advised the Adjutant General that his permanent address was in Oxford, England.-
In 1943, he requested and was granted an exemption from the District of Columbia income tax on the ground that he was not a resident of the District of Columbia. From September 1943 to July 1944, he was stationed by the Army in England where he occupied his college rooms on week ends and attended meetings of the College Governing Body.
*532 In July 1945, the Office of War Mobilization and Reconversion requested plaintiff’s services from the Army. Thereafter, he was relieved from military duty and returned to civilian life for special work with that office. At that time, plaintiff expressed his intention to return to his position at Oxford at the war’s end, and after his resignation in March 1946 returned the following month to Queens College to resume his career.
From the evidence it is clear that the College had anticipated plaintiff’s return ever since he had left in 1941. The College minutes disclose that it had carried him as on leave of absence for war service, had made up the difference between his teaching salary and his war service salary, and in 1945 had renewed his fellowship, effective 1947, for another seven years. During all this period the College and the plaintiff had continued their contributions to the University pension plan.
Before leaving for England on J anuary 26,1946, as set out above, plaintiff, in requesting that his belongings be moved, advised the Adjutant General of the Army that his “permanent residence” was Oxford, England. His request was denied on the ground that War Department records showed his civilian address to be 2869 28th Street NW., Washington, D.C.
He later appealed to the Secretary of War to have his “home of record” in the War Department files amended to show his permanent residence as Oxford, England, which appeal was also denied.
Plaintiff paid his own expenses and filed a claim with the War Department, which was referred to and denied by the General Accounting Office.
The expenses, which are the basis of this suit, incurred by plaintiff in moving himself, his wife and household goods from Washington, D. C., to Oxford, England, were:
Transportation, plaintiff and wife_ $467.04
Transportation, household effects_1,218.10
What we are called upon to decide is where was plaintiff’s “home” to which he was entitled transportation — Oxford, England, or 2869 28th Street NW., Washington, D. C.
*533 The plaintiff contends that when he indicated his “civilian address” as Washington, D. C., he understood and so intended it to mean his mailing address where official communications from the Army could be sent, especially any notice of emergency.
Under the circumstances as disclosed by the evidence, this in our opinion was a fair and reasonable interpretation on plaintiff’s part. His “home” when he first entered into wartime service, which we believe his duties with the American Minister to England in 1941 can be fairly called, was in Oxford, England. True, he was a citizen of the United States, but the nature of his work was such that he was required to maintain his “home” in England.
When he was transferred to this country, he had to find living quarters somewhere and did find them by moving in with his brother. Later he married and moved into his wife’s apartment where he lived until the time he was inducted into the armed forces. When his release from the Army was effected by the War Mobilization and Reconversion Office for special war work, he informed his superiors that he regarded such work as war service only and that he intended to return to Oxford at the end of the wax'. While the Office of War Mobilization and Reconversion was still in operation, he resigned and as soon as practicable thereafter left this country for England.
From his acts and expressed intentions it seems to us that plaintiff actually intended Oxford, England, as his home and permanent address.
Section 37 (a) of the National Defense Act, supra, reads in part as follows:
* * * When on active duty he [Reserve Officer] shall receive the same pay and allowances as an officer of the Regular Army * * *, and mileage from his home to his first station and from his last station to his home.
Section 12 of the Pay Readjustment Act, as amended, swpra, contains this language:
Officers of the Army, * * * while on active duty in the Federal service, when traveling under competent orders * * * including travel from home to first station * * * and from last station *534 to home in connection with relief from active duty * * * shall receive a mileage allowance * * *.
When any officer * * * having dependents * * * is ordered to make a permanent change of station, the United States shall furnish transportation * * * to his new station for such dependents * * *
The words “permanent change of station” as Used in this section shall include the change * * * from last station to home in connection with retirement, relief from active duty, * * *
Thus, the language of the statutes contains no reference other than to “home” in providing for transportation upon relief from duty.
Executive Order No. 9222, August 15, 1942, 7 F. R. 6555,[1] authorized the heads of the departments concerned to prescribe regulations not inconsistent with Section 12 of the Pay Readjustment Act.
By virtue of such authorization, the Adjutant General of the Army promulgated Army Regulations No. 35-4880, dated April 19, 1945, Section II, paragraph 17 of which provides:
The “home” to which personnel of a reserve component released from active duty are entitled to transportation for dependents at Goverment expense, * * *, is the home or official residence of record at the time ordered to active duty, and where the dependents travel to a home which the persons elects upon release from active duty, rather than to the home or official residence of record at time ordered to active duty, the cost to the Government for transportation may not exceed what it would have cost had the travel been to such home or official residence of record.
Other Army Regulations [2] relating to baggage, transportation of furniture and household effects, authorize such transportation to the “place designated as the home when called to active duty.”
The Comptroller General of the United States in 19 Comp. Gen. 731, 735, held:
* * * Accordingly, it must be concluded a Reserve Officer may not, under the law, obligate the *535 Government for any greater allowance of mileage upon relief from active duty than from his last duty station to his home of record in the Adjutant General’s Office at the time of entering upon the ordered tour of active duty.
However, under date of July 12, 1944, the same officer ruled, in response to a request for a modification of the “home of record” rule made by the Secretary of War, as follows:
* * * the word “home” as used in Section 37 (a) of the National Defense Act contemplates the permanent residence or domicile of reserve officers when ordered to active duty. It reasonably may be assumed that the word “home” as used in paragraph 6 of Section 12 of the Pay Eeadjustment Act of 1942 contemplates a like meaning. The home or permanent residence of a person is a matter of fact to he deduced from the circumstances in the individuad case * * * [Italics supplied.]
The Comptroller General then proceeded to relax the rule as it affected a group of warrant officers and enlisted men who upon being appointed Eeserve Officers designated their home address at the time of their appointment at or near the station where they were serving.
Obviously, in that case there was ample justification for the relaxation of the general rule as these men did not regard their station as the home to which they intended to return at the conclusion of their tour of duty. It is fair to assume that they intended to give only a mailing address where official Army correspondence and notices could be sent.
We fail to see any distinction between the case of these men and the one which we are presently considering. We do accept the view that “The home * * * is a matter of fact to be deduced from the circumstances in the individual case.”
At the same time we recognize that for the orderly administration of affairs in the War Department as they affected Army personnel, the designation of a “civilian address” on the required forms and questionnaires created a presumption that such address was the “home” address of the individual. But, we do think that such a presumption can be overcome by a consideration of the facts and circumstances in particular cases. Here the plaintiff plainly indi *536 cated all along the way, except for the designation on the Army forms, that he not only regarded Oxford, England, as his “home,” but that he intended to return to it as soon as his war service as a soldier and as a civilian was concluded. That he married and moved into his wife’s apartment and used that address as a temporary mailing address did not in any way affect his basic conception of where the “home” to which he intended to return was located.
Under these circumstances, we are of the opinion that Oxford, England, meets all the commonly accepted requirements as to domicile, permanent address, or “home of record” to which plaintiff was entitled to transportation for himself, his wife, and furnishings. (I Beale, Conflict of Laws, Sec. 10.3, p. 109; State of Texas v. State of Florida, 306 U. S. 398, 424; DeHaven and Son Hardware Co. v. Schultz, 122 Ore. 493, 259 P. 778, 780.)
The administrative interpretation of the statutes involved, while generally fair and reasonable, would in exceptional cases such as this one, produce a result entirely contrary to the beneficent intention of Congress which prompted the legislation.
Judgment will be entered in favor of the plaintiff in the amount of $1,685.14.
It is so ordered.
Madden, Judge; Whitaker, Judge; Littleton, Judge; and Jones, Chief Judge, concur.

 3 CFR 1943, Cum. Supp. 1193.

 Army Regulations No. 55-160, See. III, paragraph 14a (1) and (11) (b), dated April 26, 1943.